JONES et al. v. MAWMAN et al.

No. 14795.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 25, 1946.

Rehearing Denied Dec. 6, 1946.

Donald & Donald, of Bowie, for appellants.

Smoot & Smoot and Geo. A. Smoot, all of Wichita Falls, and Stine, Bunting & Stine, and Vincent Stine, all of Henrietta, for appellees.

McDONALD, Chief Justice.

The facts of this case are somewhat complicated, but a brief statement will suffice to show the facts which control the disposition we make of the appeal.

In 1906 J. A. Smith and wife Mattie Smith acquired the land involved in this suit, and occupied it as their homestead until the time of the purported conveyance of the land by G. H. Isbell and wife to J. L. H. Jones by deed dated March 7, 1936.

It is alleged in appellants' pleadings, and shown by the undisputed evidence, that on April 3, 1935, J. A. Smith and wife executed a deed purporting to convey the land to G. H. Isbell, a nephew of Mr. Smith; that the deed from Smith to Isbell recited a consideration of $1200.00, evidenced by six vendor's lien notes in the sum of $200.00 each; that said purported conveyance from Smith to Isbell was a simulated transaction, and was made for the sole purpose of enabling Smith to borrow some money by using such vendor's lien notes; that the Smiths thereafter continued to occupy the land as their homestead, and that Isbell never claimed to own the land or any interest therein, but participated in the transaction only to enable Smith to borrow such money; that during the year 1936 Smith arranged for a trade of such land for other land owned by J. L. H. Jones, and in effecting the exchange of properties Smith caused Isbell and Isbell's wife to execute a deed purporting to convey the land to Jones. Smith and wife moved from the land upon consummation of the trade with Jones, and Jones and his wife moved onto the land. These facts, as we have said, are alleged by appellants, and are shown by the undisputed evidence.

The evidence also shows, without dispute, that on October 11, 1935, Smith and wife executed a correction deed, in favor of Isbell, which refers to the deed of April 3,

1935, and plainly shows that it was executed for the purpose of correcting a faulty description in the first deed to Isbell. The correction deed recites a consideration of one dollar, but makes no reference to the six vendor's lien notes of $200.00 each which are set out in the first deed to Isbell.

After the date of the first deed to Isbell, Smith arranged to borrow some money from appellee Mrs. Perdew and to secure a loan theretofore made from her, and made use of five of the vendor's lien notes for that purpose. We shall not further describe the loan transactions with Mrs. Perdew, nor shall we attempt to decide whether the evidence shows that she was or was not an innocent purchaser of the notes, except to say that the evidence perhaps raised jury issues as to her claimed status of bona fide purchaser of the notes.

After Jones received the deed from Isbell, he executed a note and a deed of trust securing same, in favor of Mrs. Perdew. This note purports from its recitals to have been given in part in renewal of the balance owing on the vendor's lien notes above described. Later, a trustee's sale was held for the purpose of foreclosing the deed of trust lien, and Mrs. Perdew now holds whatever title, if any, that passed by such deed of trust sale. On November 22, 1944, Mrs. Smith, individually and as community survivor and sole heir of J. A. Smith, then deceased, executed a quitclaim deed purporting to convey said land to George A Mawman, who thereafter executed a deed purporting to convey the land to Mrs. Perdew.

In 1940 Jones filed suit against Mawman and Mrs. Perdew (and also against R. E. Bell, who was thereafter dismissed from the suit on the ground that he had been only a tenant and had removed from the property), the allegations of the petition being in the general form of trespass to try title. In 1945, upon suggestion of the death of Mr. Jones, his widow, Mrs. Iva Jones, and certain named children, were substituted as plaintiffs. Thereafter both the plaintiffs and the defendants filed lengthy pleadings, which need not be described in detail.

Plaintiffs, as well as defendants, moved for an instructed verdict. The court granted defendants' motion, and rendered judgment decreeing that plaintiffs take nothing by their suit, and that the defendant Mrs. Perdew recover title and possession of the property from the plaintiffs. Plaintiffs have appealed. They present fifteen points of error, but if the trial court was correct in instructing a verdict for Mrs. Perdew, some of appellants' points of error will not require discussion.

The basic contention upon which appellees seek to uphold the judgment is that plaintffs' pleadings, and the undisputed evidence, demonstrate that plaintiffs had no title to the property. As has been said, plaintiffs alleged, and claim in this court, that there was only a pretended sale, and not one in fact, from the Smiths to Isbell, that Isbell had no title or interest to or in the property, and that it continued to belong to the Smiths and was their homestead up to the time of the trade with Jones.

Article 16, Sec. 50, of the Texas Constitution, Vernon's Ann.St., provides in part: "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

The clause providing that all pretended sales of the homestead involving any condition of defeasance shall be void is discussed at length in the opinion in Kearby v. Cox, Tex.Com.App., 211 S.W. 932. There it is undoubtedly held that such a pretended sale is void, and that it does not become valid upon later abandonment of the homestead. In that case a pretended sale was made to a creditor of the homestead owner. Later, at the direction of the homestead owner, the creditor undertook to convey the homestead to third persons who had notice of the pretended nature of the deed to the creditor. It was held that no title passed. We shall not discuss the holding in detail, but refer to it, because in it there were made substantially the same contentions which the plaintiffs make here. The court held that the conveyance to the credi-

tor was absolutely void and that the abandonment thereafter of the property as a homestead did not give the conveyance validity. It was argued that the creditor had the legal title to the property, and could pass it upon direction of the real owner, but the court overruled that contention, saying that the creditor had no title to the property and could convey none.

By their pleadings, plaintiffs established facts which rendered void the deed from the Smiths to Isbell. Isbell had no title, and could convey none to Jones. The property continued to belong to the Smiths, and was their homestead. They could transfer the title thereto to Jones only by a proper conveyance executed by Smith and his wife. Plaintiffs have attempted neither to allege nor to prove that they were innocent purchasers of the land from Isbell, the holder of the record title. Having established the lack of title in Isbell by their own pleadings, and by the undisputed evidence, the burden was upon them to plead and prove any facts which might be relied on to overcome the situation thus shown. If they sought to establish title in themselves as innocent purchasers, or by estoppel of some sort, the burden was upon them to plead and prove the facts and to submit to the jury the issues raised thereby. It is plain from the record that plaintiffs did not attempt to establish title upon any such basis. In fact, the proof shows that they knew that Smith was the real owner of the land and occupied it as his homestead at the time they received the deed from Isbell.

Smith, it is agreed, was the common source of title. Plaintiffs not only failed to establish title in themselves, but affirmatively established that they did not have title. Mrs. Perdew acquired title, if in no other way, by reason of the quitclaim deed from Mrs. Smith.

Plaintiffs vigorously contend that the notes and lien set out in the deed from Smith to Isbell were void, but that the deed from Smith to Isbell was not void. They also argue that title passed in any event to Isbell by virtue of the correction deed executed by the Smiths, which makes no mention of a lien. The flaw in the latter contention is that the correction deed was but a part of the pretended sale from Smith to Isbell. It is undisputed that neither the original nor the correction deed was intended as a conveyance to Isbell, but was only a pretended sale made in order that Smith might place a lien on the homestead. Both deeds were void. Neither conveyed any title, legal or equitable, to Isbell. Plaintiffs also argue that Isbell was a trustee, holding the title for the benefit of the Smiths, and that Isbell could pass title on Smith's direction. The argument is directly contrary to the holding in Kearby v. Cox, supra.

Plaintiffs cite, among other cases, J. P. Wooten Motor Co. v. First Nat. Bank of Swenson, Tex.Com.App., 281 S.W. 196, 197, in which a mortgage on a homestead was held to be void. The same article of the Constitution which declares void a mortgage on the homestead, except when given for certain purposes, also declares void all pretended sales of the homestead involving any condition of defeasance. We may, therefore, appropriately quote the following language of that opinion as being applicable not only to a mortgage on the homestead, but also to a pretended sale under the conditions named: "Now, a void instrument has no effect whatever, either as between the parties or as to others. Its invalidity may be asserted whenever and wherever called in question, and by any person whomsoever whose rights are affected. It need not be attacked directly, but may be attacked collaterally. It has no legal effect. It is nothing."

Plaintiffs also cite Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935, but we can find nothing in that opinion which in any way militates against the views which we have expressed herein. In fact, the cited opinion reaffirms the rule that a pretended sale of the homestead with condition of defeasance is void.

The judgment of the trial court is affirmed.

HALL, J., not sitting.