KEARBY v. COX et al. (No. 75–2839.)

(Commission of Appeals of Texas, Section B. May 28, 1919.)

1. HOMESTEAD ⬦⟾115(2) — MORTGAGE — VALIDITY.

Under Const. 1876, art. 16, § 50, an attempted mortgage of a business homestead by the husband joined by his wife was absolutely void, and conferred no right whatever and was incapable of validation by any act of the husband, such as its subsequent abandonment as a homestead.

2. HOMESTEAD ⬦⟾115(1)—MORTGAGE—CONVEYANCE BY MORTGAGEE—EFFECT.

Where mortgage of business homestead by husband joined by wife was absolutely void under Const. 1876, art. 16, § 50, the subsequent abandonment of property as a homestead did not give it any validity, and the mortgagee's conveyance to others by husband's direction in consideration of grantees' payment of husband's indebtedness to mortgagee passed no title or interest to grantees, especially where they knew that property was homestead property which had been mortgaged to their grantor.

3. FRAUDS, STATUTE OF ⬦⟾116(3, 4)—VERBAL AUTHORITY TO CONVEY REAL ESTATE.

The verbal authority of the owner of real estate to another to convey it confers no power to do so, because in clear violation of the statute of frauds.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by J. P. Kearby against L. B. Cox and others. Decree for complainant, and certain defendants appeal, and from a judgment of the Court of Civil Appeals, Ft. Worth (175 S. W. 731), reversing and rendering, plaintiff brings error. Reversed, and judgment of the trial court affirmed.

Kearby & Kearby, of Comanche, for plaintiff in error.

Smith & Palmer, of Comanche, for defendants in error

MONTGOMERY, P. J. There is but one question which we think it necessary to decide in this case.

J. G. Daniels, a married man, on April 18, 1912, was the owner of a certain improved lot in the town of Gustine, Comanche county, Tex., which was at that time his business homestead. On that day, Daniels, joined by his wife, by deed in the usual form reciting a cash consideration, conveyed the lot to J. P. Petit & Co. The trial court and the Court of Civil Appeals found as a fact that this deed was intended as a mortgage to secure certain debts due by Daniels to Petit & Co., and this finding is not attacked. This deed was filed for record on July 15, 1915.

On April 30, 1913, Petit & Co. at the request and direction of Daniels conveyed the property to L. B. Cox and H. H. Stephenson. The consideration of this conveyance was $1,200, which was paid by Cox and Stephenson's paying certain indebtedness of Daniels to Petit & Co. and certain other persons and paying to Daniels in person $140 in cash. This deed was never recorded.

Cox and Stephenson, when they obtained this deed, knew that the property at the time of the conveyance to Petit & Co. was the business homestead of Daniels and knew that the conveyance, which though in the form of a deed, was intended to be, and was in fact, a mortgage. On November 24, 1913, J. P. Kearby obtained two judgments against Daniels, and an abstract of each of these judgments properly certified was filed, recorded, and properly indexed in Comanche county. The abstract of one of these judgments was filed March 6, 1916, and the other on March 24, 1914.

After the execution of the conveyance by

Daniels and wife to Petit & Co. and before the conveyance by Petit & Co. to Cox and Stephenson, Daniels and wife abandoned the property as a homestead. This suit was brought by J. H. Kearby to foreclose his judgment liens on said property against Daniels and wife, and Cox and Stephenson.

The sole question we think necessary to decide is whether, under the facts stated, Cox and Stephenson got any title to the property under the deed from Petit & Co.

The trial court held that no title passed by said deed and rendered judgment for plaintiff, Kearby, foreclosing the judgment liens against all the parties. The Court of Civil Appeals held that the conveyance by Daniels and wife to Petit & Co. was a mortgage and "did not divest the actual title out of Daniels and wife," but that "Petit & Co. did have the paper title, and as such holder might be said to hold such title as the trustee of Daniels and wife," and that the subsequent conveyance made by Petit & Co. after the homestead had been abandoned and before the lien of the judgments attached at the instance of Daniels and for his benefit passed the title by estoppel to Cox and Stephenson.

In support of its conclusion, the Court of Civil Appeals cites Marler v. Handy, 88 Tex. 421, 31 S. W. 636; Irion v. Mills, 41 Tex. 310; and Randleman v. Cargile (Civ. App.) 163 S. W. 350.

In order to show that these cases cited have no application to the case at bar, we think it necessary to refer briefly to the history of the homestead provision in the Constitutions of 1845 and 1869 and to the construction put upon said provisions by the courts. The Constitution of 1845, art. 7, § 22, reads as follows:

"The homestead of a family, not to exceed two hundred acres of land (not included in a town or city, or any town or city lots), in value not to exceed two thousand dollars, shall not be subject to forced sale for any debts hereafter contracted; nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the Legislature may hereafter point out."

The homestead provision of the Constitution of 1869 (article 12, § 15), in so far as the question we have under discussion is concerned, is identical with that of 1845.

Under the Constitution of 1845, and also under the Constitution of 1869, it was held that the deed of the husband alone, although made during the existence of the homestead character, would be effective to pass the title if thereafter the property was abandoned as a homestead. Irion v. Mills, 41 Tex. 314; Gould v. West, 32 Tex. 352.

It was also held prior to the Constitution of 1876 that a mortgage on a homestead was not void, but was unenforceable, so long as the homestead character existed; and that, after the abandonment of the homestead, the lien could be foreclosed. Sampson v. Wil-

liamson, 6 Tex. 109, 55 Am. Dec. 762; Lee v. Kingsbury, 13 Tex. 69, 62 Am. Dec. 546; Stewart v. Mackey, 16 Tex. 56, 67 Am. Dec. 609; Jordan v. Peak, 38 Tex. 429; Petty v. Barrett, 37 Tex. 84. The Constitution of 1876, art. 16, § 50, provides:

"No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

It will be noted that, with reference to mortgages and liens attempted to be created on the homestead, the Constitution of 1876 is materially different from that of 1845 and 1869; while the provision with reference to the sale of the homestead is practically identical in all of said Constitutions.

[1, 2] After adoption of the Constitution of 1876, in the case of Inge v. Cain, which is reported in 65 Tex. 79, Associate Justice Robertson, after discussing the several constitutional provisions above referred to, said:

"We are of opinion that the clause quoted from the Constitution of 1876 renders all liens upon the homestead, not expressly excepted, absolutely void, and that they are not vitalized by the divestiture of the homestead character. The owner is no longer tempted to stake the home of his family upon desperate or delusive ventures, and the creditor can no more gamble upon the chances of the cessation of the homestead use."

This case has been followed in all the decisions of Texas since that time in which the question has arisen, and we think that it should be considered as settled that any attempted mortgage upon a homestead is absolutely void and confers no right whatever and that it is incapable of validation by any action on the part of the husband.

All the cases referred to by the Court of Civil Appeals are cases in which the husband alone has made a sale and conveyance of the property; and the courts in all those cases held that the conveyance was not void, but that the same did not entitle the party to possession of the property so long as the property was used and occupied as a home, and that the conveyance might be defeated by a sale of the homestead made by the husband and wife in the manner provided by law before the abandonment thereof.

From the foregoing, it will be seen that there is a vital distinction between the attempt on the part of a husband to mortgage a homestead and a sale thereof by him without the joinder of the wife. Whether there is any good reason for this distinction, it is not for us to say. It is sufficient that the makers of our Constitution have seen fit to make a distinction between the two transactions. Our conclusion is that the conveyance from

Daniels to Petit & Co. was absolutely void and that the abandonment thereafter of the property as a homestead by Daniels and wife did not give the same validity.

Our further conclusion is that the deed from Petit & Co. to Cox and Stephenson passed no title or interest in the property. Petit & Co. had no title and therefore could convey none.

The most that can be said is that Petit & Co. under a verbal instruction of Daniels conveyed the property which was owned by Daniels to Cox and Stephenson.

[3] It is too well settled to require authority that the verbal authority of the owner of real estate to another to convey it confers no power to do so, because in clear violation of the statute of frauds.

The undisputed evidence of this case shows that Cox and Stephenson knew that Petit & Co. had no title and knew the facts which, as a matter of law, show that the conveyance to Petit & Co. was void. Under these facts, we think that no estoppel arises.

It is true that it has been held that the owner of a legal title may, by direction of the owner of the equitable title, convey the property, and that the conveyance will be binding upon the owner of the equitable title; but in this case it is clear that Petit & Co. had no title whatever to the property. If the deed to Petit & Co. was void, the case stands as if the deed had never been made, and, if no such conveyance had been made, it is clear that the request of Daniels to Petit & Co. to convey the property to another would pass no title.

Our conclusion is that the judgment of the Court of Civil Appeals should be reversed and that of the trial court affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

━━━━━

(85 Tex. Cr. R. 315)
Ex parte BENNETT. (No. 5335.)

(Court of Criminal Appeals of Texas. March 12, 1919. On Motion for Rehearing, May 21, 1919.)

1. CRIMINAL LAW ☜206—COURT OF CRIMINAL APPEALS—LIMITATION OF RIGHT TO APPEAL FROM CORPORATION COURT—CONSTITUTION AND CITY CHARTER.

Under Const. art. 5, §§ 1, 5, 16, 19, 22, the Legislature, by the charter of the city of Texarkana, section 131, defining powers and duties of corporation court of the city, and section 144, as amended by Loc. & Sp. Laws 31st Leg. c. 96, and Sp. Laws 33d Leg. c. 65, had power to limit the right of appeal to the Court of Criminal Appeals from the corporation court,

by stipulating that, unless fine exceeds $25, the judgment of the corporation court shall be final.

On Motion for Rehearing.

2. CRIMINAL LAW ☜1004—RIGHT OF APPEAL.

There is no such thing as a right of appeal, except as the same may be conferred by the body of laws made up by the Constitution and legislative enactments; and, being wholly derived therefrom, such right moves only in channels fixed by such legal direction.

3. CRIMINAL LAW ☜1005—APPEALS—CONTROL OF SPECIAL BY GENERAL STATUTES.

Vernon's Ann. Code Cr. Proc. 1916, arts. 894, 895, relating to appeals, being general, do not control the provisions of a special law relating to appeals from one particular court.

Application for habeas corpus on behalf of Ethel Bennett. Relator remanded to custody.

T. N. Graham, and Dorough, Crumpton & Lincoln, all of Texarkana, for appellant. Wm. V. Brown, City Atty., of Texarkana, and E. A. Berry, Asst. Atty. Gen., for the State.

LATTIMORE, J. In 1907, by special act of the Legislature (Acts 30th Leg. c. 104) a city charter was granted to the city of Texarkana, Tex. Section 131 of said act defines the powers and duties of the corporation court of said city, which was given concurrent jurisdiction with both justice and county courts in criminal cases arising under state laws within the territorial limits of said city; said section contains the following:

"And the jurisdiction of the county court of Bowie county, Texas, shall be and is hereby conformed to the changes hereby made."

This section of said act does not seem to have been changed since its passage. Another section, No. 144, provided that all appeals from said court should be returnable to, and tried by, the county court of Bowie county from which, if the amount of fine was more than $100, the case might be appealed to the Court of Criminal Appeals under the rules of procedure prescribed by said laws.

By amendment to this charter act in 1909 (page 728, Special Laws of the Thirty-First Legislature) section 144 was so changed as to give the right of appeal to the Court of Criminal Appeals from any conviction in said corporation court whether for violation of ordinances or state laws, appeals to the county court of Bowie county being omitted from said amended act, which also contained a provision that the jurisdiction of the county court of Bowie county was conformed thereto. We take it that these provisions