**James Randall TROXEL, as Co–Independent Administrator of the Estate of James Ferron Troxel, Deceased, Appellant**

v.

**Valerie BISHOP, Appellee.**

No. 05–04–00937–CV.

Court of Appeals of Texas, Dallas.

Aug. 15, 2006.

David Charles Bakutis, Bakutis, McCully & Sawyer, P.C., Fort Worth, for appellant.

Lora P. Unglaub, Unglaub Law Firm, Plano, for appellee.

Before Justices WRIGHT, MOSELEY, and LANG.

## OPINION

Opinion By Justice MOSELEY.

This case involves a dispute over the ownership of a house. Appellant James

Randall Troxel, co-independent administrator of the estate of his deceased father, James Ferron Troxel,[1] sued Valerie Bishop seeking a declaration of a constructive trust on the title to the house and an order requiring Bishop to execute a deed to the property in favor of the administrator. The trial court granted summary judgment in favor of Bishop, stating that there was no genuine issue of material fact as to Bishop's "affirmative defense of Statute of Frauds," and that Bishop had "proven the counterclaim and disproved at least one element of [the administrator's] claim." The Administrator appeals. For the reasons that follow, we affirm the trial court's order granting the summary judgment.

## I. FACTUAL BACKGROUND

The parties' pleadings, motions, and briefs—and the summary judgment evidence—are clear as to the facts giving rise to this case, and the dispositive facts appear to be undisputed.

Troxel met Bishop when she was assigned to his rehabilitation after heart surgery. They developed a friendship; the summary judgment evidence characterized her relationship to Troxel as being like a "surrogate daughter." Bishop was getting a divorce in 1998 and having trouble supporting herself. Troxel, who considered Bishop a "surrogate daughter," told his good friend and employer, Alan Greenberg, that he had bought a house in Garland, Texas, to give to Bishop. He asked Greenberg to "hold" title of the house for him as a favor, as he did not want to put the title in Bishop's name while her divorce was pending. Greenberg agreed to do so, understanding that the property was intended to be for Bishop at that time.

---

1. For clarity, we will refer to appellant as the administrator and the decedent, James Ferron Troxel, as "Troxel."

A warranty deed was executed transferring the house from its previous owners to Greenberg, although Troxel paid the purchase price of the property. The deed was dated in January 1998, and was recorded the following month.

For about two years, Bishop did not move into the house, although she kept some personal belongings there. She kept the house a secret from her husband during the pendency of their divorce. However, she was the one who had picked out the house for purchase; her name was originally on the purchase contract; and from the beginning she considered the house to be hers as a gift from Troxel. During this period Troxel paid the taxes on the property, and although the administrator alleged Troxel maintained the property, the only summary judgment evidence is that both he and Bishop paid expenses related to the house.

In May 2000, after Bishop was divorced, she moved into the house, and she and Troxel discussed transferring the deed to the house to her. Troxel told her he was preparing a deed to have the property transferred into her name. Troxel asked Greenberg to execute a deed with the grantee's name left blank, telling him he would be transferring the house to Bishop, and that Troxel's attorney "will take care of the rest." Greenberg signed the deed. Troxel later asked Greenberg to execute another deed, this one listing Bishop as the grantee. Greenberg executed this deed on or about May 25, 2000, and although he did not deliver the deed to Bishop, the deed was recorded several weeks thereafter. A certified copy of the deed, filed of record, shows that the county clerk had been instructed to return the deed after filing to Bishop.

The deed, titled a "cash warranty deed," recited consideration of "TEN AND NO/100 DOLLARS and other good and valu-

able consideration." Bishop paid the ten dollars nominal consideration, but otherwise did not pay any of the purchase price. Greenberg considered the deed to be a completion of the transfer of title to Bishop. He did not consider the deed to be a gift from him to Bishop, as he did not consider the property to be his to give.

Troxel died in 2001. Bishop and Greenberg met for the first time several months later.

## II. PROCEDURAL BACKGROUND

Although the facts giving rise to this dispute are clear, the parties' pleadings, motions, and briefs are more ambiguous as to their legal positions and arguments.

In his original petition, the administrator alleged (on information and belief) that Troxel "did not intend to make a gift to ... Bishop, but had only intended that the title to said property be in her name because [Troxel] owed a considerable amount of income tax and the IRS was investigating and prosecuting a claim against him. Also, [Troxel] was married to someone else at the time and he did not want her to know of his relationship with ... Bishop." The administrator asked the trial court to "impose a constructive trust on the property with the Estate owning the property as the constructive beneficiary and that ... Bishop should be ordered to deed said property back to the Estate to clear title to the property."

The administrator's first amended petition repeated the above "information-and-belief" allegations concerning Troxel's intentions about the ownership of the property. He also alleged that Greenberg was "only an agent for [Troxel] in the purchase of this property. Mr. Greenberg did not own this property and [Troxel] was the true owner. Since there is no written authority for Mr. Greenberg to sell this

property, his action in signing the deed in favor of ... Bishop was void and of no effect." He again requested imposition of a constructive trust.

In her first amended answer, Bishop specifically asserted as defenses the Statute of Frauds and the "Dead Man's Rule," stating that as a matter of law these two principles precluded the administrator from asserting any claims to the property, as well as the specific relief sought. She also asserted that the administrator was claiming an interest in the property

> based on fraud which the estate alleges [Troxel] committed, either against the IRS or the community estate. In no way, however, can the estate step into shoes larger than those of [Troxel]. The [administrator] lacks both standing and capacity to pursue this suit against [Bishop] based on fraud the estate asserts was committed by [Troxel].[2]

Bishop also moved for summary judgment. The assertions in her first amended motion for summary judgment are somewhat murky and seem to be repetitive. However, she appears to assert three grounds. First, the summary judgment evidence showed that she held record title to the property and that Troxel had never held record title to the property; thus, the administrator lacked both standing and capacity to seek a declaratory judgment or an order requiring her to deed the property to him. Second, the Statute of Frauds and the Dead Man's Rule "preclude any genuine issue of material fact from being asserted ... to defeat this motion for summary judgment." More specifically, she asserted the "Dead Man's Rule and the Statute of Frauds preclude [the administrator] from asserting any interest in [the] property, absent a writing reflecting an agreement or memorandum between

[Bishop] and [Troxel] to the effect that the property would be conveyed to [Troxel] at some later point." Third, even if the facts alleged by the administrator were true, Bishop asserted that Texas recognized no cause of action through which the administrator could recover the relief he sought.

The administrator filed a motion for partial summary judgment and response to Bishop's motion for summary judgment. In this motion/response, he asserts two grounds in support of his summary judgment. First, he reiterated that Bishop's claim to the property was based on an alleged oral gift from Troxel, which failed for several reasons. Second, he reiterated that application of the Statute of Frauds meant that Greenberg lacked any authority as Troxel's agent to transfer the property to Bishop.

Before the summary judgment hearing, the administrator also filed a second amended petition. In it the administrator dropped any allegations that Troxel was attempting to avoid the IRS or keep his relationship with Bishop secret from his wife. Instead, the administrator admitted that Troxel "wanted to buy, as a gift, the Property allegedly for [Bishop]." Further, he asserted that Bishop's claim to the property was based on an alleged oral gift from Troxel, which failed for several reasons. He also alleged that any transfer by Greenberg to Bishop was based on an oral authorization, and that "oral authority to convey real estate is void as violating the statute of frauds." More specifically, he alleged Greenberg acted as Troxel's agent in purchasing the property, but absent written authority from Troxel to sell or transfer the property, his deed to Bishop "was void and of no effect." The administrator again requested the trial court to

2. Bishop also sought court costs and reasonable attorney's fees in defense of the suit.

impose a constructive trust on the property and order Bishop to deed it to him.[3]

After a hearing, the trial court granted Bishop's first amended motion for summary judgment. The court found "there is no genuine issue of material fact as to [Bishop's] affirmative defense of Statute of Frauds and [Bishop] is entitled to summary judgment thereon." The court also found that Bishop "has proven the counterclaim and disproved at least one element of [the administrator's] claim." The trial awarded Bishop $9,170 in attorney's fees. This appeal followed.

## III. SUMMARY JUDGMENT

### A. Standard of Review

The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex.App.-Dallas 1992, no writ). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston*, 589 S.W.2d at 678; *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 828 (Tex.App.-Dallas 1994, writ denied). We consider all grounds on which the trial court ruled and may consider grounds on which it did not rule "in the interest of judicial economy." *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996). When both parties file motions for summary judgment, we consider all the evidence accompanying both motions in determining whether to grant either party's motion. *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex.1969); *Dallas County Appraisal Dist. v. Inst. for Aerobics Research*, 766 S.W.2d 318, 319 (Tex.App.-Dallas 1989, writ denied).

### B. The Administrator's Claim

In his third and eighth issues, the administrator contends the trial court erred in entering summary judgment in Bishop's favor because she did not disprove at least one element of the administrator's claim. Under both issues, the administrator argues that this transaction did not meet the requirements of an oral gift of real property pursuant to *Thompson v. Dart*, 746 S.W.2d 821, 825 (Tex.App.-San Antonio 1988, no writ).

### C. Applicable Law

#### 1. Gift

The three elements constituting a gift are: (1) donative intent, (2) delivery of the property, and (3) acceptance of the property. *Id.* All dominion and control over the property must be released by the owner. *Id.* The one claiming the gift has the burden of establishing these elements.

---

**3.** The administrator also requested costs and attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code and section 114.064 of the Texas Trust Code.

*Id.* A gift of realty can be made in two ways: either by deed or by parol gift. *Id.*

■■■■ Title to transferred property will vest upon execution and delivery of a deed. *Rothrock v. Rothrock,* 104 S.W.3d 135, 138 (Tex.App.-Waco 2003, pet. denied) (citing *Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257, 261 (Tex.1974)). The question of delivery of the deed, being controlled by the intent of the grantor, is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument. *Id.* However, proof that a deed was filed of record establishes a prima facie case of delivery and the accompanying presumption that the grantor intended to convey the land according to the terms of the deed. *Id.* On the other hand, this latter presumption—that a deed was intended to be operative as a conveyance according to its terms—may overcome by evidence that: (1) the deed was delivered or recorded for a different purpose, (2) fraud, accident, or mistake accompanied the delivery or recording, or (3) the grantor had no intention of divesting himself of title. *Id.*

■■■■ There are three requisites to uphold a parol gift of realty in equity: (1) a gift in praesenti, (2) possession under the gift by the donee with the donor's consent, and (3) permanent and valuable improvements made on the property by the donee with the donor's knowledge or consent or, without improvements, the existence of such facts as would make it a fraud upon the donee not to enforce the gift. *Thompson,* 746 S.W.2d at 825; *see also Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921). "In praesenti" means at the present time; it is used in opposition to "in futuro." *Thompson,* 746 S.W.2d at 825. Thus, to be a gift in praesenti, the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. *Id.* The donee's possession must be in the nature of an owner's right to control. *Id.* An effective parol gift of real property is not in violation of the statutes of fraud. *Whitten v. Dethloff,* 214 S.W.2d 480, 484 (Tex.Civ.App.-Fort Worth 1948, no writ) (citing then-effective statutes of fraud and conveyancing); *see* TEX. BUS. & COM.CODE ANN. § 26.01(a) (Vernon Supp. 2006); TEX. PROP.CODE ANN. § 5.021 (Vernon 2004).

### 2. Constructive Trusts and Resulting Trusts

The administrator sought the imposition of a constructive trust on the property, as well as an order requiring Bishop to deed legal title of the property to the estate.

■■■■ A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Hubbard v. Shankle,* 138 S.W.3d 474, 485 (Tex.App.-Fort Worth 2004, pet. denied). To obtain a constructive trust, the proponent must prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Id.*

■■■■ While the form of a constructive trust is practically without limit, its existence depends upon the circumstances. *Id.* Whether a constructive trust should be imposed at all is within the discretion of the trial court. *Id.* To impose a constructive trust, a breach of a duty or actual or constructive fraud must be present. *Id.*

■■■■ The Statute of Frauds is not a bar to the establishment of a constructive trust, since such trusts may be proved by parol. *Fain v. Beaver,* 478 S.W.2d 816, 820 (Tex.Civ.App.-Waco 1972, writ ref'd n.r.e.) (citing *Sorrells v. Coffield,* 144 Tex. 31, 34, 187 S.W.2d 980, 981 (1945), and *Wilson v. Therrell,* 304 S.W.2d 723, 728

(Tex.Civ.App.-Amarillo 1957, writ ref'd n.r.e.)). However, the proponent of a constructive trust must strictly prove the elements necessary for the imposition of the trust. *Hubbard*, 138 S.W.3d at 485.

■■■■■■■ Although they are often confused, resulting trusts and constructive trusts rely on two different theoretical bases. *Sheldon Petroleum Co. v. Peirce*, 546 S.W.2d 954, 957 (Tex.Civ.App.-Dallas 1977, no writ). Both are implied by operation of law to prevent unjust enrichment. However, a resulting trust—more accurately denominated a purchase money resulting trust—is an equitable remedy primarily involving consideration. *In re Marriage of Loftis*, 40 S.W.3d 160, 165 (Tex.App.-Texarkana 2001, no pet.). A resulting trust arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another. *Tolle v. Sawtelle*, 246 S.W.2d 916, 919 (Tex.Civ.App.-Eastland 1952, writ ref'd). The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner. *Cohrs v. Scott*, 161 Tex. 111, 338 S.W.2d 127, 130 (1960). The trustee of a resulting trust generally is responsible only for conveying the property to the beneficiary or in accordance with his directions. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex.1984). Generally, the law is suspicious of resulting trusts, and consequently a heavy burden of proof is placed on the party attempting to establish the existence

of one. *See Equitable Trust Co. v. Roland*, 721 S.W.2d 530, 533 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.); *see also Savell v. Savell*, 837 S.W.2d 836, 839 (Tex. App.-Houston [14th Dist.] 1992, writ denied).

## D. Discussion

### 1. Constructive Trust

■■■■ After the administrator amended his pleadings to drop allegations that Troxel had the property deeded to Greenberg—and later to Bishop—in order to avoid obligations to the IRS or to keep the existence of the property a secret from his spouse, he no longer alleged any facts that could be construed as asserting the breach of a special trust, fiduciary relationship, or actual fraud; neither did he allege any facts that could be construed as asserting any unjust enrichment by the wrongdoer. *See Hubbard*, 138 S.W.3d at 485. Thus, he abandoned any allegations that, if proven, might have served as a basis for requesting the imposition of a constructive trust. *See id.*[4]

Furthermore, by alleging that the transaction between Troxel, Greenberg, and Bishop was an effort to make a gift of the house to Troxel, the administrator has admitted two of the grounds necessary for imposition of a constructive trust do not exist. As a result, the trial court did not err in entering summary judgment on the grounds that Bishop has disproved one or more of the elements of the administrator's claim.

---

4. As a result, we need not address whether the administrator has standing (and thus whether the trial court or this Court has jurisdiction) to seek to set aside his decedent's transaction on the grounds it was fraudulent. *See Markward v. Murrah*, 138 Tex. 34, 156 S.W.2d 971, 974 (1941), (property fraudulently conveyed by grantor constitutes no part of grantor's estate and administrator has no interest therein); *John Hancock Mut. Life Ins.*

*Co. v. Morse*, 132 Tex. 534, 124 S.W.2d 330, 332 (1939) (administrator of grantor in fraudulent transaction not a proper plaintiff in suit to recover property fraudulently conveyed); *In re Marriage of Parker*, 997 S.W.2d 833, 838 (Tex.App.-Texarkana 1999, pet. denied) (on public policy grounds, courts will not aid grantor in reclaiming property transferred in order to defraud another).

## 2. Purchase Money Resulting Trust

■ Even if we construe the administrator's second amended pleading as requesting the imposition of a purchase money resulting trust, the trial court's grant of summary judgment was not error. It is undisputed that the previous owners of the house executed a warranty deed—dated January 1998 and recorded the following month—in favor of Greenberg. It is also undisputed that Troxel paid the purchase price. Accordingly, after the first deed Greenberg held legal title to the house subject to Troxel's purchase money resulting trust.

Further, it is undisputed that Greenberg conveyed the property to Bishop in accordance with his beneficiary's—Troxel's—directions. Troxel asked Greenberg to sign a deed, in which the grantee's name was left blank, telling him he would be transferring the house to Bishop, and that Troxel's attorney "will take care of the rest." Later Troxel asked him to sign a second deed—this one naming Bishop as the grantee. In both instances Greenberg did as he was asked. Thus, it is undisputed that Greenberg fulfilled his responsibility as Troxel's trustee under the resulting trust. See Nolana Dev. Ass'n, 682 S.W.2d at 250.[5] Further, the trial court could infer from the summary judgment evidence that Troxel ratified Greenberg's action in signing the deed, either by giving the deed to Bishop for recording or by having the deed recorded and instructing the county clerk to return the recorded deed to Bishop. As a result, no reason existed for the continued imposition of an equitable trust in favor of the Troxel as the source of the purchase money for the house. We conclude that Bishop dis-

proved an element of any claim by the administrator for a purchase money resulting trust.

## 3. Gift

The administrator also argues that Bishop's claim to the property is based on an attempted—but unsuccessful—oral gift. The summary judgment evidence shows otherwise.

■ Bishop's legal title to the house vested upon execution and filing of the deed from Greenberg. See Rothrock, 104 S.W.3d 135 at 138. Because there was evidence the cash warranty deed was filed for record, Bishop established a prima facie case of delivery of the deed to her and the accompanying presumption that Greenberg intended to convey to her his legal interest in the house. See id. Moreover, this presumption was not disputed by any summary judgment evidence that: (1) Greenberg's deed to Bishop was delivered or recorded for a purpose other than transferring her legal title; (2) that the delivery or recording of the deed was accompanied by fraud, accident, or mistake; or (3) that Greenberg had no intention of divesting himself of legal title. See id. Because there is no controverting evidence, we conclude the evidence shows as a matter of law that Greenberg—at Troxel's request—transferred his legal interest in the house to Bishop by deed. See Thompson, 746 S.W.2d at 825. As a result, Bishop's claim relies on the execution, delivery, receipt and acceptance of a deed, not on an oral gift. See id.

■ However, even if Bishop's claim of equitable title to the house hinges on an alleged oral gift, the summary judgment

---

5. Further, the trial court could infer from the summary judgment evidence that Troxel ratified Greenberg's action in signing the deed, either by giving the deed to Bishop for record-ing or by having the deed recorded and instructing the county clerk to return the re-corded deed to Bishop.

evidence proves such a gift. Specifically, the undisputed evidence established: (1) Troxel intended an immediate divestiture of his ownership rights and an immediate investiture of such rights in Bishop in May 2000, when they discussed transferring the deed to her after her divorce was final, and Troxel directed Greenberg to do so, establishing a gift in praesenti in May 2000; (2) Bishop moved into the house in May 2000, establishing her possession under the gift with Troxel's consent; and (3) Bishop shared with Troxel some of the expenses of the house between January 1998 and May 2000, including, according to Greenberg, "ha[ving] the pool redone," establishing that she made "permanent and valuable improvements" on the property with Troxel's knowledge or consent. *See id.* Accordingly, the administrator's arguments that the elements of an oral gift of the real property were not established in January 1998 are unavailing because the evidence shows those elements were established in May 2000.

Accordingly, we conclude the summary judgment evidence proved that Bishop acquired both legal and equitable interest in the house in May 2000. As a result, we reject the administrator's argument that Bishop's claim is based on an attempted but ineffective oral gift of the property.

### 4. *Greenberg's authority*

▮▮▮ Also under his third issue, the administrator argues that if Bishop can prove an oral gift, Greenberg still lacked written authority to act as Troxel's agent to transfer the house to Bishop. In this context he specifically asserts that oral authority to convey real estate is void as violating the Statute of Frauds, citing *Pagel v. Pumphrey*, 204 S.W.2d 58, 63 (Tex. Civ.App.-San Antonio 1947, writ ref'd n.r.e.) and *Kearby v. Cox*, 211 S.W. 932 (Tex.Comm.App.1919, jgmt.adopted).

▮▮▮ First, an obligation subject to the Statute of Frauds is voidable, not void. *See Madera Prod. Co. v. Atlantic Richfield Co.*, 107 S.W.3d 652, 662 (Tex.App.-Texarkana 2003, writ denied in part, dism'd in part), and cases cited therein. Second, the Statute of Frauds relates to the enforcement of an agreement to sell, not the authority of an agent. *See* Tex. Bus. & Com.Code Ann. § 26.01(a), (b)(4) (providing that contract for sale of real estate not enforceable unless promise or agreement is "signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him"). Therefore, the Statute of Frauds by its language does not address whether the creation of an agency relationship or the authorization to sign on one's behalf to convey real property must be in writing.

Although the Statute of Frauds does not apply here, the property code provides: "A conveyance of . . . a freehold . . . must be in writing and must be subscribed and delivered by the conveyor *or by the conveyor's agent authorized in writing.*" Tex. Prop.Code Ann. § 5.021 (emphasis added). However, here the cash warranty deed was signed by Greenberg—not "Troxel by Greenberg"—because Greenberg owned the legal title and conveyed it to Bishop. Greenberg was the owner and conveyor, not an agent. Accordingly, we conclude the conveyancing statute does not apply.

Third, we have reviewed *Pagel* and *Kearby* and find them distinguishable from the present case. The language in *Kearby* related to a situation characterized as a property owner (Daniels) orally instructing a second party (Petit & Co.) to convey the property to a third party (Cox & Stephenson), who had actual knowledge that the second party had no ownership interest in the property. In that situation, the court had no problem stating that the deed from the second party to the third party was

void and ineffective to cut off the homestead rights of the owner's spouse. *See Kearby,* 211 S.W. at 932–33. *Pagel* contains no analysis, but merely cites *Kearby. See Pagel,* 204 S.W.2d at 63.

Finally, the administrator's argument confuses the source of Bishop's alleged oral gift. That source is Troxel, not Greenberg. Having proven the prerequisites of an effective parol gift from Troxel in 2000—a gift in praesenti from Troxel, possession by Bishop with Troxel's consent, and the making of permanent and valuable improvements on the property with Troxel's knowledge or consent—Greenberg's authority to execute a written deed is irrelevant to Bishop's equitable title to the property. *See Whitten,* 214 S.W.2d at 484.

## IV. CONCLUSION

Accordingly, having rejected the administrator's arguments, we conclude the trial court properly granted summary judgment in Bishop's favor because the evidence conclusively establishes a gift of the property to her by deed and by oral gift. *See City of Houston,* 589 S.W.2d at 678–79. We resolve the administrator's third and eighth issues against him.

Because of our disposition of the administrator's third and eighth issues, we need not consider his remaining issues in which he argues that none of the other grounds on which summary judgment was urged support granting summary judgment in Bishop's favor. *See Cincinnati Life Ins. Co.,* 927 S.W.2d at 626. We affirm the trial court's summary judgment.