**Opinion issued July 9, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00702-CV

———————————

## LYNETTE STARR, Appellant

## V.

## A.J. STRUSS & COMPANY, Appellee

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 70046**

---

## MEMORANDUM OPINION

Appellant Lynette Starr appeals the trial court's rendition of summary judgment in favor of Appellee A.J. Struss & Company ("A.J. Struss"). Lynette sued A.J. Struss to recover property and personal injury damages that she alleged were caused by A.J. Struss's faulty installation of a new heating, ventilation, and

air conditioning ("HVAC") system. The trial court granted summary judgment on the property claim on the ground that Lynette did not hold legal title to the home and therefore lacked standing to sue for damage to it. With regard to Lynette's personal injury claim, it granted summary judgment because Lynette adduced no evidence raising a fact issue as to whether her alleged injuries were caused by A.J. Struss. We affirm in part, reverse in part, and remand the cause to the trial court for further proceedings.

## Background

Lynette's father, Ray Starr, built a home in Angleton, Texas in 1964, and he and his wife, Sharron, lived there until 2011. Lynette lived in the home from 1994 to 2012.

In 2011, Lynette applied to the Galveston County Community Action Counsel for a grant to replace the home's HVAC unit. She received the grant, and on November 9, 2011, A.J. Struss installed a new HVAC unit at no cost to the Starrs.

Lynette sued A.J. Struss in October 2012, asserting that A.J. Struss negligently installed the HVAC system, which caused water damage to ceilings, walls, and floors that resulted in mold infestation. In February 2014, Lynette amended her petition for a third time and alleged negligence, fraud, and violations

of the Deceptive Trade Practices Act ("DTPA"), which resulted in property and personal injury damages. She sought damages for:

- physical pain and mental anguish;

- loss of home equity;

- loss of use of the home;

- cost of reasonable and necessary medical expenses;

- "cost of repair;" and

- cost of mold remediation.

On June 5, 2014, A.J. Struss filed two motions for summary judgment. On both traditional and no-evidence grounds,[1] A.J. Struss moved for summary judgment on Lynette's claims for property damages, arguing that Lynette lacked standing to assert claims for property damage because she did not own the home. In its no-evidence motion concerning Lynette's claims for personal injury damages,[2] A.J. Struss argued that there was no evidence showing Lynette's alleged exposure to mold caused her alleged personal injuries. Specifically, A.J. Struss argued that it was entitled to summary judgment because Lynette failed to

---

[1] Although A.J. Struss's motion for summary judgment concerning Lynette's claims for property damage includes the standard of review for no-evidence motions for summary judgment, the motion itself contains both no-evidence and traditional grounds. Accordingly, we consider this motion as a combined traditional and no-evidence motion for summary judgment.

[2] A.J. Struss requested summary judgment on "all claims for personal injury damages, including physical pain and mental anguish, emotional distress, impairment, disfigurement, lost wages, in the past and future . . . ."

3

adduce expert evidence showing the levels of mold exposure and that the mold exposure caused her alleged health issues.

In response to A.J. Struss's motion concerning standing, Lynette argued she had standing to sue for property damage because, although Ray never executed a deed, she holds equitable title to the property because Ray "gave" it to her in 2005. She offered Ray's affidavit,[3] in which he averred:

- I "gave" Lynette the house in 2005, "but did not move out, or make a Deed."

- "By my gift of the house to Lynette, I expressly granted to her the rights and responsibilities of ownership, including finding and authorizing the replacement of the air conditioning system."

- In 2011, my wife and I moved out of the home "after the incident that is the basis of this lawsuit" and I have "relied upon Lynette to make all claims for damage to the house from this incident, both before and after suit."

- In 2013, I "specifically authorized Lynette Starr to bring this suit concerning the house, which is still in my name."

In response to A.J. Struss's motion concerning claims for personal injury damages, Lynette argued that expert testimony was unnecessary because her health conditions were within a jury's common knowledge and experience. In support, Lynette offered her own affidavit, in which she averred:

- I "began to experience allergy-type symptoms, including coughing, reddened eyes, headaches, sinus infections, nosebleeds, and itchy skin" within a few weeks of the "flooding";

---

[3] Lynette also offered a Durable Power of Attorney in support of her response. But we do not consider it on appeal because Lynette does not challenge the trial court's decision to sustain A.J. Struss's objection to the document.

4

- I sought medical care for wheezing and shortness of breath;

- I developed "small infected areas" on my skin and "abscesses [and] large infections in my gums";

- I sought medical care for my skin infections and my "doctors [had] not been able to discover any other cause of the infections other than my exposure to the molded environment of the home";

- I had surgery on my teeth and jaw because of gum abscesses and my dentist "believe[d] that the infections in my gums [were] related to the infections on my skin";

- "Because I [was] familiar with my own health, and because the only thing that changed in my environment was the flooding of the house, I believe[d] that the flooding allowed the mold to grow, and the mold caused my allergies and symptoms"; and

- "Allergic responses are within the knowledge of a layperson. The determination of causation is based largely on the immediacy of my responses to the presence of the mold in my house, and due to the fact that when I [was] not in the house or exposed to the mold, the symptoms [went] away. When I [had] to go back into the home, the allergic responses start[ed] again."

Lynette also offered excerpts of her own deposition, in which she testified that mold exposure caused the following health problems:

- Difficulty in breathing and wheezing;

- Tightness in her chest and coughing;

- Allergies;

- Infections in her sinuses, chest, head, ears, teeth and jaw; and

- Skin disorders.

In July 2014, the trial court conducted a hearing on A.J. Struss's motions for summary judgment and its objections to Lynette's summary-judgment evidence. On August 1, 2014, the trial court entered a final judgment granting both summary-judgment motions. The trial court's order stated that "[t]he motion for Summary Judgment regarding standing is granted as to property damage claims" and "[t]he No Evidence Motion for Summary Judgment in regard to a lack of expert witness testimony is granted."

## Discussion

### I. The trial court's judgment was final

In her third issue, Lynette contends that we lack jurisdiction because A.J. Struss's summary judgment motions did not address all of her claims and the trial court's order granting summary judgment is therefore not a final appealable judgment. Specifically, Lynette contends that A.J. Struss's summary-judgment motions failed to address her claim for damages to personal property inside the home.

A judgment is final if it disposes of all claims and parties before the court, regardless of its language, or if it states with unmistakable clarity that it is a final judgment as to all claims and all parties. *In re Vaishangi, Inc.*, 442 S.W.3d 256, 259 (Tex. 2014) (citations omitted).

6

A.J. Struss's summary-judgment motion concerning standing covered "claims for economic damages associated with the home and/or property." That motion thus addressed all of Lynette's claims for property damage, including claims for damage to the real property and damage to the personal property in the home. And A.J. Struss's second motion for summary judgment covered all claims for personal injuries. The trial court's summary-judgment order disposed of Lynette's property and personal injury claims; it therefore disposed of all of her claims, and was in fact a final judgment. *See id.* (judgment is final if it disposes of all claims).

We overrule Lynette's third issue and hold that we have jurisdiction to consider the merits of Lynette's appeal.

## II. Summary Judgment

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each

of the elements specified in the motion. *Hahn*, 321 S.W.3d at 524; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We review a trial court's decision to grant or to deny a motion for summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2008).

## A. Claims for property damage

In her first issue, Lynette contends that the trial court erred in granting summary judgment on her claims for property damage on the ground that she did not own the home and therefore lacked standing because she raised a fact issue as to whether she held equitable title to the home. According to Lynette, she raised a

8

fact issue concerning equitable title because she adduced evidence demonstrating that her father, Ray, orally gifted the home to her.

## 1. Summary judgment motions challenging jurisdiction

A summary-judgment motion challenging jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 402 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004)). When such a motion challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* (citing *Miranda*, 133 S.W.3d at 227). If a fact question is presented by the evidence regarding a jurisdictional issue, then the trial court is precluded from granting summary judgment on the jurisdictional challenge, and fact issues will be resolved by the fact-finder. *Id.* (citing *Miranda*, 133 S.W.3d at 227–28). However, if the relevant evidence is undisputed or fails to raise a genuine fact issue regarding the jurisdictional challenge, the trial court grants summary judgment as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 228).

## 2. Standing

"[S]tanding focuses on the question of who may bring an action . . . ." *Patterson v. Planned Parenthood of Houston and Southeast Tex., Inc.*, 971 S.W.2d

9

439, 442 (Tex. 1998). The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judgment sought. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "To establish standing, a person must show a personal stake in the controversy." *In re B.I.V.*, 923 S.W.2d 573, 574 (Tex. 1996).

Standing is a component of subject-matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46; *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it."). If a party lacks standing to bring an action, the trial court lacks subject-matter jurisdiction to hear the case. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444–45.

Typically, a challenge to standing is raised in a plea to the jurisdiction. *See Brown v. Todd*, 53 S.W.3d 297, 305 n.3 (Tex. 2001) ("Because standing is a component of subject matter jurisdiction, we consider [the plaintiff's] standing as we would a plea to the jurisdiction."). But the Texas Supreme Court has recognized that the absence of subject-matter jurisdiction may also be raised by a traditional motion for summary judgment. *See, e.g.*, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

10

We review whether a trial court has subject matter jurisdiction de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

### 3.    Parol gift of realty in equity

"A gift is a voluntary transfer of property to another made gratuitously and without consideration."  *Gomer v. Davis*, 419 S.W.3d 470, 476 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Lopez v. Lopez*, 271 S.W.3d 780, 788 (Tex. App.—Waco 2008, no pet.)).  The three elements that constitute a gift are: (1) donative intent, (2) delivery of the property, and (3) acceptance of the property by the donee. *Id.*

Although the statute of frauds generally prohibits enforcement of an oral conveyance of real property, *see* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4) (West 2015),  the rule does not apply if a plaintiff shows a parol gift of real estate in equity.  *Flores v. Flores*, 225 S.W.3d 651, 655 (Tex. App.—El Paso 2006, pet. denied); *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.). To establish a valid parol gift of real estate in equity, a plaintiff must show three elements: (1)  a gift at the present time ("a gift in praesenti"), (2) possession under the gift by the donee with the donor's consent, and (3) permanent and valuable improvements made on the property by the donee with the donor's knowledge or consent or, without improvements, the existence of such facts as would make it a

11

fraud upon the donee not to enforce the gift. *Flores*, 225 S.W.3d at 655 (citing *Thompson v. Dart*, 746 S.W.2d 821, 825 (Tex. App.—San Antonio 1988, no writ); *Dawson v. Tumlinson*, 242 S.W.2d 191, 192–93 (Tex. 1951)); *Troxel*, 201 S.W.3d at 297 (citing *Thompson*, 746 S.W.2d at 825 and *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921)).

### 4. Analysis

In its motion for summary judgment, A.J. Struss argued that Lynette lacked standing to assert property damage claims because she did not own the home and her parents did not expressly assign any causes of action to Lynette. Lynette contends that the trial court erred in granting summary judgment because she adduced summary-judgment evidence sufficient to raise a fact issue regarding whether she held equitable title to the home. We conclude that the trial court erred in granting A.J. Struss's motion for summary judgment based on Lynette's lack of standing because Lynette adduced evidence raising a fact issue as to whether Ray made a parol gift of realty in equity, giving her equitable title to assert the claims for property damage.

Under the first element of a parol gift of realty in equity, we consider whether Lynette raised a fact issue regarding whether Ray made a gift at the present time—meaning that he intended an immediate divesture of his rights of ownership and a consequent immediate vesting of those rights in Lynette at the

12

time he made the gift. *See Troxel*, 201 S.W.3d at 297. In response to A.J. Struss's motion for summary judgment, Lynette offered Ray's affidavit in which he averred that he "gave" Lynette the house in 2005 and by his "gift of the house to Lynette, [he] expressly granted to her the rights and responsibilities of ownership, including funding and authorizing the replacement of the air conditioning system." This was sufficient to raise a fact issue regarding whether Ray had made a present gift of the home. *See id.* at 300 (present gift where summary-judgment evidence showed donor made immediate divesture of rights and investiture of rights to appellant a year before donor died); *cf. Flores*, 225 S.W.3d at 657 (no present gift where evidence showed "at most an intent to make a gift at some future date"); *Thompson*, 746 S.W.2d at 826–27 (appellant failed to meet burden of proof to establish that present gift was made because evidence showed that donor "was going to give" property and alleged donor "act[ed] generally as though no divestiture of her property rights had occurred").

Under the second element of a parol gift of realty in equity, we consider whether Lynette raised a fact issue regarding her possession of the home with Ray's consent. *See Troxel*, 201 S.W.3d at 297. It is undisputed that Ray permitted Lynette to live in the home after 2005, and Ray averred that she had lived there "continuously" since 1994. Lynette thus raised sufficient evidence to raise a fact issue on the second element of a parol gift in realty. *Cf. Thompson*, 746 S.W.2d at

13

827 (appellees established appellants had no possession consistent with ownership rights where alleged donor executed lien on property to secure her debts and appellants' son sought buyer for property on behalf of alleged donor).

Under the third element of a parol gift of realty in equity, we consider evidence of any permanent and valuable improvements to the property by Lynette with Ray's knowledge or consent. *See Troxel*, 201 S.W.3d at 297. It is undisputed that Lynette arranged for the HVAC system replacement and obtained a grant to pay for it. In addition, Ray averred that he "expressly granted to [Lynette] the rights and responsibilities of ownership, including funding and authorizing the replacement of the air conditioning system." Because Lynette adduced evidence that she, at a minimum, made an effort to replace the HVAC system, we conclude that she adduced evidence sufficient to raise a fact issue on the third element of a parol gift in realty. *See id.* (third element of parol gift of realty in equity is met when "permanent and valuable improvements made on the property by the donee with the donor's knowledge or consent or, without improvements, the existence of such facts as would make it fraud upon the donee not to enforce the gift").

Because Lynette adduced sufficient evidence to raise a fact issue concerning whether Ray made a valid parol gift in realty, she raised a genuine issue of material fact regarding whether she held equitable title and thus had standing to sue for damage to the home. *See id.* at 300 (summary-judgment evidence showed

14

equitable title to home where evidence proved intended immediate divesture of ownership rights and investiture of rights to donee, donee moved into home at that time, and donee shared some expenses of home, including "hav[ing] the pool redone" with donor's knowledge or consent). Accordingly, the trial court erred in granting summary judgment on Lynette's claim for property damage.

We sustain Lynette's first issue.

## B. Claims for personal injury damages

In her second issue, Lynette contends that the trial court erred in granting summary judgment on her claims for personal injury damages allegedly caused by mold exposure because this is not a toxic-tort case and, therefore, expert testimony was not necessary to raise a fact issue as to causation.

Lynette alleged negligence, fraud, and DTPA violations. In its no-evidence motion for summary judgment, A.J. Struss challenged the causation element of each of these causes of action as they related to Lynette's personal injury claims. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (stating that producing cause under DTPA requires proof of causation in fact); *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (causation element of a negligence claim comprises two components: cause in fact, or "substantial factor," component and foreseeability component); *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 781 (Tex. App.—Houston [1st

Dist.] 2009, pet. denied) (causation is necessary element of fraud) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). A.J. Struss argued that there was no evidence of causation because Lynette failed to offer expert testimony showing that mold exposure caused her personal injuries.

### 1. Standard of Review and Applicable Law

#### (a) Expert testimony

"To establish causation in a personal injury case, a plaintiff must prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (citation omitted); *see Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Lay witness testimony may establish causation when "a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (citations omitted); *see Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007) ("[N]on-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence."). However, when a lay person's

general experience and common sense will not enable that person to determine causation, expert testimony is required. *See Mack Trucks*, 206 S.W.3d at 583; *Coastal Tankships*, 87 S.W.3d at 603.

Expert testimony is particularly necessary in toxic-tort and chemical-exposure cases, in which medically complex diseases and causal ambiguities compound the need for expert testimony. *See Coastal Tankships*, 87 S.W.3d at 602–04; *see also Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36–38 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding expert testimony required to show causation of reactive airway dysfunction syndrome); *Sweeney v. Geon Co.*, No. 01-00-00315-CV, 2002 WL 58223, at *5 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (not designated for publication) (noting that "causation of injuries from exposure to toxic chemicals is not readily ascertainable from general experience and common sense" and holding lay testimony not sufficient to establish that exposure to chemicals caused tooth loss, skin lesions, tumors, growths, dizziness, swollen joints, or breathing problems).

Whether expert testimony is necessary to prove causation is a question of law that we review de novo. *See Mack Trucks*, 206 S.W.3d at 583.

### (b) Toxic torts

A toxic tort means a cause of action in tort arising out of exposure to hazardous chemicals, hazardous wastes, hazardous hydrocarbons, similarly

harmful organic or mineral substances, or other similarly harmful substances. *McNair v. Owens-Corning Fiberglas Corp.*, 890 F.2d 753, 756 n.4 (5th Cir. 1989); *see* BLACK'S LAW DICTIONARY 1627 (9th ed. 2009) (toxic tort defined as a "civil wrong arising from exposure to a toxic substance, such as asbestos, radiation, or hazardous waste"). A cause of action relating to mold exposure constitutes a toxic-tort cause of action. *See, e.g.*, *Plunkett v. Connecticut Gen. Life. Ins. Co.*, 285 S.W.3d 106, 120 (Tex. App.—Dallas 2009, pet. denied) (analyzing appellants' allegations that mold exposure at apartment complex caused health complaints as toxic-tort case); *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 239 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) (noting that insured homeowner's allegation that mold in home caused husband's brain damage was toxic-tort claim).

Toxic-tort cases require proof of both "general" and "specific" causation. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997); *accord Mobil Oil Corp. v. Bailey*, 187 S.W.3d 265, 270 (Tex. App.—Beaumont 2006, pet. denied); *Frias v. Atlantic Richfield Co.*, 104 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *see generally Coastal Tankships*, 87 S.W.3d at 601–02, n.19 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). General causation addresses whether a substance is "capable of causing a particular injury or condition in the general population," while specific causation addresses whether a substance "caused a particular individual's injury." *Havner*, 953 S.W.2d at 714;

*see Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 244 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Neal v. Dow Agrosciences LLC*, 74 S.W.3d 468, 472 (Tex. App.—Dallas 2002, no pet.). "Specific causation cannot be based on inferred general causation." *Allison*, 98 S.W.3d at 239.

### 2. Analysis

Lynette contends that lay testimony was adequate to prove that mold exposure caused her personal injuries and, therefore, expert testimony was not required to defeat summary judgment. We disagree.

In an effort to raise a fact issue on causation, Lynette offered excerpts of her own deposition in which she testified that mold exposure caused her health issues, as well as her own affidavit in which she averred that mold exposure caused her allergies, sinus infections, nosebleeds, skin infections, and abscesses and infections to her gums. Lay testimony will suffice when general experience and common sense will enable a lay person fairly to determine the causal nexus. *Morgan*, 675 S.W.2d at 733; *Weidner v. Sanchez*, 14 S.W.3d 353, 370 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Although it may be within general experience that water can cause mold, we conclude that it is not within the general experience and common sense of a lay person that exposure to mold causes the injuries Lynette allegedly suffered. *See Mack Trucks*, 206 S.W.3d at 583 ("Expert testimony is required when an issue involves matters beyond jurors' common understanding.");

19

*FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 91 (Tex. 2004) ("While the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge.").

A medical expert must personally examine a plaintiff to determine with a reasonable degree of medical probability that mold exposure caused a plaintiff's health complaints. *See Plunkett*, 285 S.W.3d at 119. But, here, Lynette offered no medical evidence. She offered no affidavits or reports by doctors that specified mold exposure as the cause of her personal injuries. *Cf. Caldwell v. Curioni*, 125 S.W.3d 784, 787, 793 (Tex. App.—Dallas 2004, pet. denied) (reversing summary judgment in suit for "damages for personal injuries" because plaintiffs raised fact issue on causation by offering affidavits of several *doctors* consulted for treatment and reports specified that doctors observed "a multitude of physical problems in [the plaintiffs] which were caused by exposure to mold infestation").

Because this is a toxic-tort case and Lynette failed to offer expert testimony demonstrating that mold caused her health problems, we conclude that she failed to raise a fact issue on causation. *See Plunkett*, 285 S.W.3d at 119, 122 (affirming summary judgment on "personal injury claims" caused by exposure to toxic mold where there was no medical expert evidence from doctor who personally examined plaintiffs and determined mold caused health problems); *Coastal Tankships*, 87

20

S.W.3d at 607 (expert testimony required to prove causation in toxic-tort case); *see also* TEX. R. CIV. P. 166a(i) (trial court must grant no-evidence motion unless respondent produces summary-judgment evidence raising genuine issue of material fact of element of claim). Accordingly, we hold that the trial court did not err in granting summary judgment as to Lynette's claims for personal injury damages.

We overrule Lynette's second issue.

## Conclusion

We reverse the portion of the trial court's judgment granting summary judgment on Lynette's claims for property damage. We affirm the remainder of the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.