**Opinion issued February 19, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00135-CV

———————————

**JOSE JAIME RODRIGUEZ, Appellant**

**V.**

**RAFAEL HENRIQUEZ AND SUYAPA GUTIERREZ, Appellees**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-06359**

---

## MEMORANDUM OPINION

This appeal concerns competing claims to title to a plot of land in Harris County. Appellant Jose Jaime Rodriguez maintains that he owns the real property because he provided the purchase money in 2018 when title was fraudulently taken in his associate Rafael Henriquez's name. Appellee Suyapa Gutierrez maintains

that she owns the property because she and her late husband purchased it from Henriquez in 2020, and she proved the chain of title. The trial court concluded that Rodriguez did not have equitable or superior title to the real property, and that Gutierrez, who acted in good faith and without fraud, has legal title.

The trial court further concluded that Henriquez committed statutory and common law fraud in connection with the purchase of the real property in December 2018 and its sale in 2020, and in connection with the purchase of four items of personal property. The trial court ordered that Rodriguez recover from Henriquez actual damages on his fraud claims regarding the four items of personal property, along with treble damages under the Texas Deceptive Trade Practices Act, attorney's fees, costs, and pre- and post-judgment interest. The trial court did not award any damages on Rodriguez's fraud claim regarding the real property.

Finally, the trial court implicitly denied Rodriguez's motion for sanctions, which asserted that counsel for Gutierrez had misrepresented the facts and holdings of certain cases in argument before the court.

In three issues, Rodriguez challenges the trial court's determination that Gutierrez has legal title to the property, implicit denial of his motion for sanctions, and failure to award equitable relief for Henriquez's fraud in connection with the purchase and sale of the real property.

We affirm the trial court's judgment quieting title to the property in Gutierrez, and we thus conclude that Rodriguez was not entitled to equitable relief in connection with the purchase and sale of the real property. We also affirm the trial court's implicit denial of Rodriguez's motion for sanctions.

## Background

### I. Relationship of Parties

Rodriguez is the owner of E. Rodriguez Plumbing, which he founded in 2010. Rodriguez met Henriquez in 2016 at a park where Rodriguez sponsored and managed a soccer team and Henriquez worked part-time in private security. Early in their relationship, Henriquez helped Rodriguez, who is not fluent in English, buy a truck. In June 2018, Rodriguez hired Henriquez as an administrative assistant for his business, E. Rodriguez Plumbing.

### II. 2018 Purchase of 9410 Irby Street

The property at issue in this case is located at 9410 Irby Street in Harris County, Texas. Before December 19, 2018, it was owned by Taurus Properties, whose president was Ramiro Flores. At that time, it was vacant, undeveloped, and lacked signs or other indications of use or possession.[1]

---

[1] Some facts in the background are taken from the unchallenged findings of fact of the trial court.

According to Rodriguez, he began negotiating with Flores to buy the property in May 2018. Henriquez was not involved in the negotiations. Rodriguez maintains that by December 2018, he and Flores had agreed on a purchase price of $65,000 and set the date for closing.[2] Rodriguez, who was unable to walk due to severe injuries he sustained not long before the closing, remained in the car, while Henriquez, who had driven him, went inside to the closing. Rodriguez testified that he had authorized Henriquez to attend the closing on his behalf and that Henriquez had told him that he would bring documents to him to sign in the car if necessary. Rodriguez said that he did not expect Henriquez to take title to the property in his own name.

Rodriguez maintained that he paid the purchase price of $65,000 with a combination of a check drawn on his account, the E. Rodriguez Plumbing account, and cash, which he gave to Henriquez to bring inside the building. Rodriguez attached to his affidavit a photocopy of a check from E. Rodriguez Plumbing to North Star Title Company for $64,770.96. The settlement statement showed "Rafael Henriquez" as the "borrower," and the grantee on the warranty deed was

[2]    In his deposition, Rodriguez testified that his agreement to buy the property from Flores for $65,000 was an oral agreement; he never signed a written contract. He testified that he recalled signing documents to purchase his house, but he did not sign documents in connection with the purchase of 9410 Irby Street. When asked if he thought it strange that he did not sign documents, Rodriguez said: "When I bought my house, that was through financing, and I had to sign the title and go to the title company for the signatures, but now it was a cash purchase, and that's completely different. Mr. Rafael [Henriquez] told me that if there was any problems, he was going to bring the documents for me to sign."

Henriquez. But Rodriguez's address appeared beneath Henriquez's name on the warranty deed, and Rodriguez said that Henriquez had never lived there.

After the closing in December 2018, Rodriguez engaged contractors to clear trees, compact and level the lot, and build a fence. Henriquez continued to work for Rodriguez until November 2019, when he quit after refusing to give Rodriguez a $24,000 payment for work performed by E. Rodriguez Plumbing.[3]

## III.    2020 Sale of 9410 Irby Street

### A.    Henriquez lists the property for sale.

In January 2020, Henriquez contacted Monica Marchant, a real estate agent, and told her that he wanted to sell 9410 Irby Street as soon as possible because he was moving to Miami for business and needed the money. Henriquez told Marchant that he paid $65,000, but he was willing to sell it for $55,000 because he needed to sell quickly. Marchant asked for the deed and the survey and if there was any problem that would interfere with the sale. Henriquez denied any such problems and provided her with the deed. Marchant called William Gutierrez, a client who was looking to buy land as an investment for his children. Henriquez and William Gutierrez negotiated and agreed on a purchase price of $42,000.

---

[3]    The record includes additional evidence regarding Henriquez's fraudulent practice of assisting Rodriguez in purchasing vehicles and equipment (paid by Rodriguez) and putting title in his name. These acts of fraud are not in issue in this appeal.

## B. Rodriguez tells Gutierrez that he owns the property.

On Saturday, January 25, 2020, William Gutierrez, his wife Suyapa, and their adult son drove to the property, and William took pictures. Jose Quintanilla, who was working at the property for E. Rodriguez Plumbing, noticed them arrive. Quintanilla asked the driver why he was taking pictures. William told Quintanilla that he was inspecting the property because he planned to buy it from Henriquez. Quintanilla informed him that Henriquez was not the owner, and that "Henriquez was trying to steal from him and Mr. Rodriguez."

When Rodriguez called Quintanilla to check on his progress, he spoke to William by phone. Standing outside the car, Quintanilla heard William identify himself, repeat what he had told Quintanilla, say that he did not know that Henriquez was not the owner, and state that he was told the property was for sale. William recalled the phone call the same way, adding that Rodriguez told him that Henriquez is a "con artist" and to "be careful with him." Rodriguez recalled the conversation as "very, very short . . . . three or four words that we exchanged. Because he . . . said he was going to come back to talk, and he never did." Though Suyapa Gutierrez said she did not hear the conversation, she recalled that her husband said someone other than Henriquez was claiming to own the property.

William then contacted his real estate agent, Monica Marchant,[4] who confronted Henriquez about Rodriguez's assertion of ownership. Henriquez told Marchant that he was the sole owner of the property as shown on the deed, and that Rodriguez was a former business partner who was "crazy." Henriquez told Marchant to "forget about them," and that Rodriguez was a shameless liar and thief ("ladrón"). Marchant relayed Henriquez's response William, who told her that if the title was clear, he and his wife would buy the property. Marchant verified Henriquez's title with the title company, and assured William that the title was clear.

### C. Henriquez sells the property to Gutierrez, and Rodriguez files suit.

On January 29, 2020, Henriquez conveyed 9410 Irby Street to the Gutierrezes. Later that day, at 5:40 p.m., Rodriguez filed suit against Henriquez for trespass to try title, seeking title to and possession of the real property, damages, interest, costs, and reasonable attorney's fees. The warranty deed reflecting the sale from Henriquez to the Gutierrezes was recorded the following day, January 30, 2020, at 8:26 a.m. Just over seven hours later, at 4:02 p.m. on January 30, 2020, Rodriguez recorded a notice of lis pendens in the real property records of Harris County regarding the lawsuit against Henriquez.

---

[4] Gutierrez recalled that her husband told the realtor, Marchant, to investigate whether there were problems that would interfere with the purchase.

In March 2020, the Gutierrezes intervened in Rodriguez's lawsuit, asserting that they had purchased the property by warranty deed on January 29, 2020, and that they "had no knowledge of Plaintiff's [Rodriguez's] alleged interest in the Property." They pled causes of action for trespass to try title against Rodriguez and fraud, negligent misrepresentation, and unjust enrichment against Henriquez. About a year later, William died, and his wife continued the litigation.

## D. Rodriguez seeks a default judgment against Henriquez for fraud and other claims.

In August 2021, the trial court granted Rodriguez's motion for death penalty sanctions against Henriquez based on "his egregious discovery abuse" and his repeated refusal to comply with the trial court's orders.[5] In doing so, the court struck Henriquez's original answer and any other defensive pleadings filed by him or on his behalf. About seven months later, Rodriguez amended his petition adding claims for damages from the removal of trees from the property, and statutory and common law fraud in regard to both the 2018 purchase of the property and the

---

[5] "[D]iscovery sanctions can be used to adjudicate the merits of a party's claims when a party's hindrance of the discovery process justifies a presumption that its claims lack merit." *Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004); *see* TEX. R. CIV. P. 215.2(b)(5) (authorizing trial court to enter, as discovery sanction, "an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party"); *see also In re Noble Drilling (Jim Thompson), LLC*, 449 S.W.3d 625, 630 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Discovery sanctions that adjudicate a party's claims and defenses and preclude presentation of the case's merits are considered death penalty sanctions.").

2020 sale. Rodriguez sought reformation of the 2018 warranty deed, rescission of the 2020 warranty deed, and, in the alternative, recognition of a purchase money resulting trust because he paid the purchase price of the property in 2018. Rodriguez pleaded conversion and violation of the Texas Theft Liability Act in regard to the real property, as well as two vehicles, two excavators, and the money paid by an apartment complex for work performed by Rodriguez Plumbing. Contemporaneous with his amended petition, Rodriguez moved for a post-answer default judgment on his claims against Henriquez.

In September 2022, the trial court held a hearing on Rodriguez's motion for default judgment, during which Rodriguez testified, and exhibits were admitted. Rodriguez testified that he paid $65,000 for the property, and after the closing, he spent $21,000 to install a fence on the property, $5,500 to install a gate, $13,000 to clear the land, $28,000 to level the land, $11,500 for architectural plans for a shop, and $1,770 for a City permit.

E.    **Rodriguez seeks sanctions against Suyapa Gutierrez and her attorneys.**

Rodriguez sought sanctions against Suyapa Gutierrez and her attorneys under Texas Rules of Civil Procedure 13, and Chapter 10 of the Texas Civil Practice and Remedies Code, arguing that Gutierrez's pleadings were groundless ("without a basis in law or fact") and brought in bad faith (by misstating the law and acting with intent to protect Fidelity National Title from its indemnification

9

duty rather than to protect Gutierrez's interest).[6] Rodriguez argued that Suyapa was not a bona fide purchaser and that during the litigation she falsely claimed that she had no knowledge that anyone other than Henriquez was claiming an interest in the property. Rodriguez asserted that Gutierrez had both actual and constructive notice of his claims, but she and her attorneys argued that she was a bona fide purchaser by misrepresenting to the trial court the holding of various cases.

**F.      The parties submit their claims to the court on a stipulated record.**

The trial court held a non-evidentiary hearing on the sanctions motion on November 20, 2023, and then the parties submitted the case to the court for determination based on an agreed stipulated record.

The stipulated record included deposition excerpts and other exhibits, some of which were offered without objection. One such exhibit offered without objection was Intervenor's I-03, a business records affidavit and attached records from North Star Title regarding the sale of the property from Taurus Properties to

---

[6]      Rodriguez also sought sanctions under Chapter 9 of the Texas Civil Practice and Remedies Code. "Chapter 9 of the Texas Civil Practice and Remedies Code also addresses frivolous pleadings and claims, but its application is limited to proceedings in which neither Rule 13 nor Chapter 10 applies. . . . Chapter 9 has largely been subsumed by subsequent revisions to the code." *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 362 n.6 (Tex. 2014); *see* Cynthia Nguyen, *An Ounce of Prevention is Worth a Pound of Cure?: Frivolous Litigation Diagnosis Under Texas Government Code Chapters 9 and 10, and Texas Rule of Civil Procedure 13*, 41 S. TEX. L. REV. 1061, 1083–84 (2000) (theorizing "it would be difficult to conceive of a scenario in which Chapter 9 would be applicable," and noting that "there are only a handful of cases that even cite Chapter 9, and these date from before the 1999 amendment to Section 9.012").

Rafael Henriquez. These documents included the warranty deed, the settlement statement, and the purchase agreement between Henriquez and Taurus Properties for the purchase of 9410 Irby Street, for $65,000, dated December 11, 2018. There was also a money order for $650.00 made out to North Star Title from Rafael Henriquez, with a memo line stating "9410 Irby."

**G.     The trial court finds that Henriquez committed fraud against Rodriguez, but Gutierrez has superior title to the property.**

The trial court granted judgment in favor of Gutierrez on her trespass to try title claim, finding that she had proven chain of title and that her title was superior to that claimed by Rodriguez. In its findings of fact, the court found that Henriquez represented to Gutierrez that he owned the property and that his ownership of legal title was memorialized in the 2018 deed. The court further found that Rodriguez, who was a stranger to Gutierrez, represented that he, not Henriquez, owned the property, but before the sale, there were no records in the Harris County Real Property Records indicating that Rodriguez had any interest in or claim to the property. The court found that "Mrs. Gutierrez could only surmise, guess, or conjecture as to [Rodrguez's] representation." The court also found: "At all relevant times, Mrs. Gutierrez's conduct has been honest in fact, free of improper motive or willful ignorance of the facts at hand."

In its conclusions of law, the trial court found that Rodriguez "appears nowhere in the chain of title from Taurus . . . to Henriquez." The court also

concluded that Rodriguez had not shown "an equitable right to the [p]roperty," "an equitable title superior to Mrs. Gutierrez's legal title," or "an interest to the [p]roperty that is valid or enforceable."

The trial court further concluded that Henriquez committed statutory and common law fraud in connection with the purchase of the real property in December 2018 and its sale in 2020, and in connection with the purchase of four items of personal property. The trial court ordered that Rodriguez recover from Henriquez actual damages on his fraud claims regarding the four items of personal property, along with treble damages under the Texas Deceptive Trade Practices Act, attorney's fees, costs, and pre- and post-judgment interest. The trial court did not award any damages on Rodriguez's fraud claim regarding the real property.

The court did not rule on Rodriguez's motion for sanctions, but the final judgment stated that "[a]ll other relief requested and not granted herein is denied," and stated that it was final and appealable. Thus, the trial court implicitly denied Rodriguez's motion for sanctions.

This appeal followed.

## Analysis

### I. The trial court correctly held that Gutierrez has legal title.

In his first issue, Rodriguez argues that the trial court erred by misapplying the law regarding who has title to the real property. Rodriguez does not dispute that

Gutierrez has proven that she holds legal title through a chain-of-title analysis.[7] But he argues that he has equitable title by virtue of a purchase money resulting trust and that his title is superior to that of Gutierrez. Gutierrez argues that Rodriguez has not proven the existence of a purchase money resulting trust because the evidence (1) demonstrates that Henriquez purchased the property in 2018 and (2) suggests that the check from Rodriguez's plumbing company may have been a loan.[8]

---

[7]   "A trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE § 22.001(a); *see Brumley v. McDuff*, 616 S.W.3d 826, 831–32 (Tex. 2021). In a trespass-to-try-title action, a plaintiff may prove legal title by establishing: (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned. *Brumley*, 616 S.W.3d at 832. In its findings of fact, the trial court found that (1) before December 19, 2018, the record owner of 9410 Irby Street was Taurus Properties, (2) Henriquez received legal title to the property from Taurus Properties and that deed was recorded in the Harris County Real Property Records; (3) Gutierrez received legal title to the property from Henriquez and that deed was recorded in the Harris County Real Property Records; (4) Rodriguez appears nowhere in the chain of title from Taurus Properties to Henriquez to Gutierrez; and (5) Gutierrez's chain of title is unbroken. Rodriguez has not challenged these findings of fact on appeal, making Gutierrez's chain of title conclusive. *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014) ("We defer to unchallenged findings of fact that are supported by some evidence.").

[8]   She also argues that, even if Rodriguez had shown the existence of a purchase money resulting trust, she was nevertheless a bona fide purchaser because neither Rodriguez's statement that he was the owner nor his purported use of the property created actual or constructive notice that would defeat her status as a bona fide purchaser.

### A. Standards of Review

On appeal, both parties frame the standard of review as being either a challenge to the trial court's legal conclusions (Rodriguez) or a challenge to the trial court's findings of fact (Gutierrez). We disagree with this framing of this issue. Rather than presenting issues specifically challenging the trial court's findings of fact for sufficiency of the evidence or conceding the findings of fact but disagreeing with the conclusion, Rodriguez maintains that the trial court's judgment was incorrect because of his alleged purchase money resulting trust.[9]

"When a plaintiff challenges the judgment entered against him following a bench trial and argues that he established his cause of action as a matter of law, we will apply the same standard of review applicable to the denial of a plaintiff's motion for directed verdict." *Jackson v. Jefferson*, No. 01-15-00344-CV, 2016 WL 5400431, at *3 (Tex. App.—Houston [1st Dist.] Sept. 27, 2016, no pet.) (mem. op.). "A denial of a motion for directed verdict may be reversed when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law and there is no evidence to the contrary." *See Hartford Fire Ins. Co. v. C*

---

[9] "Rodriguez was entitled to have the Court declare him the equitable owner of the Property under the theory of a purchase money resulting trust because the focus of a purchase money resulting trust is on the question of consideration. Rodriguez established below that he paid the full consideration for the purchase of the Property." Appellant's Br. 49–50.

*Springs 300, Ltd.*, 287 S.W.3d 771, 777 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (stating standard of review for denial of directed verdict).

We review a trial court's decision to deny a motion for directed verdict under the legal sufficiency standard of review. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). "When a party attacks the legal sufficiency of an adverse finding on an issue on which [he] has the burden of proof, [he] must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Here, Rodriguez was required to demonstrate on appeal that the evidence conclusively showed the existence of a purchase money resulting trust. "Evidence is conclusive only if reasonable people could not differ in their conclusions."[10] *City*

---

[10]    In her brief, Gutierrez argued that Rodriguez was required to prove the existence of a purchase money resulting trust by clear and convincing evidence. Appellee's Br. 22–23. Ordinarily, because "there is strong presumption in favor of the correctness of a deed as written and executed," *Davis v. Gayer*, No. 01-03-00165-CV, 2004 WL 638140, at *2 (Tex. App.—Houston [1st Dist.] Apr. 1, 2004, pet. denied) (mem. op.), a party seeking to establish the existence of a purchase money resulting trust must do so by clear and convincing evidence. *See Chang v. Liu*, No. 01-22-00529-CV, 2024 WL 4628401, at *7 (Tex. App.—Houston [1st Dist.] Oct. 31, 2024, no pet.) (mem. op.). Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegations sought to be established. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). Because Rodriguez was the plaintiff and had the burden of proof on the question of the purchase money resulting trust, he must meet a higher burden on appeal and demonstrate that the record includes conclusive proof of his claim, i.e., proof as to which reasonable people could not

*of Keller*, 168 S.W.3d at 816 . "In general, we recognize several types of evidence as being conclusive, including undisputed evidence that allows just one logical inference, undisputed evidence of undeniable physical facts, undisputed evidence admitted to be true, and disputed evidence that definitively negates contrary proof in some fashion, such as a scientifically reliable diagnostic test establishing paternity in the face of contrary testimony." *Prosper Florida, Inc. v. Spicy World of USA, Inc.*, 649 S.W.3d 661, 671 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *City of Keller*, 168 S.W.3d at 814–16). "Unless the evidence is conclusive, the factfinder is entitled to weigh the evidence and to assess witness credibility." *See City of Keller*, 168 S.W.3d at 816–17.

### B. Purchase Money Resulting Trust

The doctrine of resulting trust, or purchase money resulting trust, "is invoked to prevent unjust enrichment." *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984). "When title to property is taken in the name of someone other than the person who advances the purchase price, a resulting trust is created in favor of the payor." *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 220 (Tex. 1991); *see Nolana Dev. Ass'n*, 682 S.W.2d at 250; *Cohrs v. Scott*, 338 S.W.2d 127, 130 (Tex. 1960); *Haynes v. Molina*, No. 01-19-00917-CV, 2021 WL 4155822, at *6 (Tex. App.—Houston [1st Dist.] Sept. 14, 2021, pet. denied) (mem.

---

differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

16

op.) ("A party who provides all or a portion of the purchase price acquires equitable title when the deed is executed."). A resulting trust arises when title passes because the law presumes that the party who pays for the property is the true owner and the party in whom legal title is taken is holding the property for the benefit of the true owner. *E.g.*, *Haynes*, 2021 WL 4155822, at *5–6; *Troxel v. Bishop*, 201 S.W.3d 290, 298 (Tex. App.—Dallas 2006, no pet.).

Exceptions exist, for example when the facts give rise to the presumption of a gift, like when parents pay the purchase price for property and put title in the name of a child, *Amador v. Berrospe*, 961 S.W.2d 205, 07–08 (Tex. App.—Houston [1st Dist.] 1996, pet. denied), or when someone pays the purchase price as a loan and the title is taken in the name of the borrower. *See Sahagun v. Ibarra*, 90 S.W.3d 860, 864 (Tex. App.—San Antonio 2002, no pet.).

Because "there is strong presumption in favor of the correctness of a deed as written and executed," *Davis v. Gayer*, No. 01-03-00165-CV, 2004 WL 638140, at *2 (Tex. App.—Houston [1st Dist.] Apr. 1, 2004, pet. denied) (mem. op.), the law is suspicious of resulting trusts. *Troxel*, 201 S.W.3d at 298. Ordinarily, a a party seeking to establish the existence of a purchase money resulting trust must do so by clear and convincing evidence. *See Chang v. Liu*, No. 01-22-00529-CV, 2024 WL 4628401, at *7 (Tex. App.—Houston [1st Dist.] Oct. 31, 2024, no pet.) (mem. op.).

## C.    Resulting Trust Not Shown

On appeal, Rodriguez argues that the trial court erred by determining ownership based on the chain of title instead of awarding him title to the property based on his alleged purchase money resulting trust. For Rodriguez to prevail on appeal, he must first conclusively show that the evidence supports his claim that a purchase money resulting trust was created. Rodriguez maintains that he paid the full purchase price of the property and title was fraudulently conveyed to Henriquez. The evidence includes a cashier's check made out to "North Start [sic] Title Company" for $64,770.96 indicating that the remitter was E. Rodriguez Plumbing. Rodriguez testified that he paid the purchase price from his bank account, which was the same account he used for his plumbing business. He testified that he negotiated the purchase price over several months, and that Henriquez was not involved in the negotiations. Rodriguez said that Henriquez drove him to the closing due to his physical limitations at the time, and that he orally authorized Henriquez to act on his behalf at the closing and to bring him papers to sign if necessary. Rodriguez testified that he did not intend for Henriquez to take title to the property in his own name.

The stipulated evidence also includes a real estate contract showing only Henriquez as the buyer. It is dated December 11, 2018, ten days before closing,

18

and it was accompanied by a copy of a money order from Henriquez to North Star Title for $650.00 with a memo stating "9410 Irby."

The evidence does not conclusively demonstrate that Rodriguez, in his personal capacity, paid the purchase price in the "character of a purchaser" as necessary to support the presumption of a purchase money resulting trust. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 317 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (internal citations omitted).

The record evidence shows that Rodriguez and Henriquez had known each other for at least two years before Henriquez began working for him. During that time, Henriquez had assisted Rodriguez with the purchase of a vehicle. The evidence about the agreement to purchase the property in 2018 is disputed. Rodriguez testified that he negotiated with Flores for several months before reaching an agreement about the purchase price. On the other hand, the record also includes a written purchase agreement showing Henriquez as the purchaser, as well as a money order for $650.00 made out to North Star Title from Rafael Henriquez, with a memo line stating "9410 Irby." While Rodriguez's testimony suggests that he intended to be the purchaser, the documentary evidence shows that the agreement was for Henriquez to buy the property.

The cashier's check and Rodriguez's testimony that the E. Rodriguez Plumbing account was his personal account is some evidence that Rodriguez

19

advanced the money to pay for the property. However, in light of the years-long relationship he had with Henriquez and the purchase agreement between Henriquez and Taurus Properties, a reasonable fact finder could have believed that the check was intended to be a loan.

Rodriguez's burden on appeal was to show that the record conclusively proved his assertion that he paid the purchase money and was the beneficiary of a purchase money resulting trust. Because the evidence would allow reasonable people to differ in their conclusions—either Rodriguez advanced the money as a purchaser or he loaned it to Henriquez, a friend and employee—it is not conclusive. *See City of Keller*, 168 S.W.3d at 816. Rodriguez did not carry his burden on appeal, and we overrule this issue.

## II. The trial court did not abuse its discretion by implicitly denying the motion for sanctions.

In his second issue, Rodriguez challenges the trial court's implicit denial of his motion for sanctions under Texas Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code. We review a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *Low v. Henry,* 221 S.W.3d 609, 614 (Tex. 2007). Under this standard, "[a]lthough we view conflicting evidence favorably to the court's decision, we are not bound by a trial court's fact findings or conclusions of law and must, instead, review the entire record independently to determine

20

whether the trial court abused its discretion." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). "[We] may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Low*, 221 S.W.3d at 614.

As in *Nath*, the requested sanctions in this case involve pleadings and other filings. *See Nath*, 446 S.W.3d at 361. Rule 13 provides that pleadings that are groundless and in bad faith, intended to harass, or false when made are sanctionable:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who . . . make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt . . . .

> Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. . . .

TEX. R. CIV. P. 13. "Rule 13 does not permit sanctions on the issue of groundlessness alone. Rather, the filing in question must be groundless and also either brought in bad faith, brought for the purpose of harassment, or false when made." *Nath*, 446 S.W.3d at 362–63.

21

"Chapter 10 allows sanctions for pleadings filed with an improper purpose or that lack legal or factual support." *Id.* at 362. It provides that by signing a pleading or motion, a signatory attests that:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

TEX. CIV. PRAC. & REM. CODE § 10.001. Pleadings that violate these requirements are sanctionable. *Id.* § 10.004(a). But a court may not sanction a represented party under section 10.001 for unfounded legal contentions. *Id.* § 10.004(d).

Rodriguez's sanctions request was based on his contention that Gutierrez's pleading was false when made because she knew that Rodriguez told her husband that he, not Henriquez, owned the property. The sanctions request was also grounded on Rodriguez's assertion that Gutierrez's pleadings and motions included unfounded legal contentions about the application of the bona fide purchaser doctrine, which were based on misrepresentations of caselaw.

22

To prevail on appeal, Rodriguez must demonstrate that the trial court abused its discretion because the record shows that Gutierrez's assertion that she had no knowledge of any other legal claims to property was false and that her pleadings and motions actually included unfounded legal contentions about the application of the bona fide purchaser doctrine. While our holding that Rodriguez did not demonstrate the existence of a purchase money resulting trust is sufficient to dispose of his first issue without consideration of the bona fide purchaser doctrine, *see* section I.C., *supra*, his bona fide purchaser arguments are relevant to his claim about the denial of his sanctions motion. Accordingly, we now consider those arguments.

Ordinarily, an unrecorded conveyance of real property is void as to a subsequent purchaser for valuable consideration and without notice of third-party claims, who is referred to as a "bona fide purchaser." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001); *see* TEX. PROP. CODE § 13.001(a) ("A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law."). Status as a bona fide purchaser is typically an affirmative defense to a title dispute. *Madison*, 39 S.W.3d 604, 606 (Tex. 2001); *see 425 Soledad, Ltd. v. CRVI Riverwalk Hosp., LLC*, 709 S.W.3d 551, 559 & n.21

23

(Tex. 2024). However, when a plaintiff claims an equitable title, he assumes the burden of proving that the subsequent purchaser of the legal title was not a bona fide purchaser. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex. 1982); *see also Cities Serv. Oil Co. v. Dunlap*, 308 U.S. 208, 212 (1939) ("In the absence of evidence showing [Petitioner, who held legal title,] was not a bona fide purchaser its position was superior to a claimant asserting an equitable interest only.").

Because Rodriguez's claim is based on an equitable interest—a purchase money resulting trust—to prevail, he was required to show that Gutierrez was not a bona fide purchaser. *See Westland Oil Dev. Corp.*, 637 S.W.2d at 907. Throughout this litigation, Rodriguez has argued that his and Quintanilla's conversations with William, in which both men informed William that Rodriguez, not Henriquez, owned the property, provided both William and Suyapa with actual notice of a third-party claim and that notice was sufficient to defeat their status as bona fide purchasers. In addition, Rodriguez also argues that the work he did on the property, including fencing, and Quintanilla's presence on the land when the Gutierrezes inspected it, provided additional notice of their claim.

"For property interests, notice has two forms: actual and constructive. Actual notice is personal knowledge or those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed. When a

24

duty to inquire exists, negligent ignorance has the same effect in law as actual knowledge." *425 Soledad, Ltd.*, 709 S.W.3d at 560 (internal quotations omitted). But not every piece of information or statement made to a would-be bona fide purchaser amounts to notice. *See Hue Nguyen v. Chapa*, 305 S.W.3d 316, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that evidence that "provides nothing more than basis for surmise, guess, or conjecture" as to third-party's interest is no more than a scintilla of evidence of actual knowledge). "Generally, the question of whether a party has notice is a question of fact; it becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence." *Id.* at 323.

Here, the evidence shows that Quintanilla and Rodriguez told the Gutierrezes that Rodriguez, not Henriquez, owned the property, and they accused Henriquez of trying to steal from Rodriguez and Gutierrez. After Gutierrez asked his realtor to investigate, Henriquez said that he, not Rodriguez, owned the property, and Henriquez called Rodriguez a thief. Far from leaving no room for ordinary minds to differ, these competing statements directly contradicted each other, providing no basis for Gutierrez to acquire actual knowledge of the fact of a third party's claim of a legal interest in the property. Instead, the competing statements provided no more than a basis for surmise, guess, or speculation. *See id.* at 324. Moreover, Gutierrez, through Marchant and the title company, investigated

25

and found nothing indicating that Rodriguez had a legal claim to the property. Indeed, she could not have found anything because Rodriguez's lawsuit and lis pendens were filed only after the closing of the property sale.

In the trial court, Rodriguez also contended that Gutierrez had constructive notice of his claim because, prior to closing, she visited the property and saw (1) a fully fenced and gated property, (2) that was leveled and cleared of brush, trash, and debris, (3) protected by guard dogs, and (4) occupied by Quintanilla who told them he was working for Rodriguez.

In *Madison v. Gordon*, the Texas Supreme Court explained that a purchaser may be charged with constructive notice of an occupant's claims to real property when the occupant's possession of the land is visible, open, exclusive, and unequivocal. 39 S.W.3d at 606. In that circumstance, the purchaser "is charged with notice of all the occupant's claims the purchaser might have reasonably discovered on proper inquiry." *Id.* at 606. However, when such possession is ambiguous or equivocal, or may appear subservient or attributable to the legal title holder, then the act of possession does not constitute actual or constructive notice of unrecorded property claims. *Id.* at 607.

Here, there were no structures, no signs, and no indication that Rodriguez or his plumbing company were occupiers or possessors of the land, aside from the statements we have already discussed. The existence of a fence and a gate is

evidence that someone put it there, but alone it is not evidence as to who put it on the property. The same is true for the dogs and the work that had been done to clear trees and level the land. Quintanilla's presence on the land is not evidence of open, visible or unequivocal acts of occupancy because the record shows that he worked for Rodriguez's plumbing company, which did jobs for a variety of clients in a variety of locations. From the perspective of a purchaser—Gutierrez—the presence of a contract worker on the property is not openly or visibly inconsistent with Henriquez's ownership. We conclude that Gutierrez did not have constructive notice of Rodriguez's claims of ownership of the property based on Quintanilla's presence, the gate, the fence, the cleared trees, the leveled ground, or the presence of dogs. *See id.* at 606–07.

Having reached these conclusions, we hold that Rodriguez did not demonstrate that the trial court abused its discretion by denying his motion for sanctions. We overrule Rodriguez's second issue.

## III. The trial court did not err by failing to grant reformation and rescission giving legal title to Rodriguez.

In his third issue, Rodriguez argues that the trial court erred by failing to reform and rescind the deeds in this case based on its finding that Henriquez committed statutory fraud in connection with the purchase and sale of 9410 Irby Street. In light of our holdings in sections I and II of this opinion, we conclude that Rodriguez was not entitled to legal title to 9410 Irby Street, and thus the trial court

27

did not err in failing to award Rodriguez the specific remedies of reformation and rescission. We overrule Rodriguez's third issue.[11]

## Conclusion

We affirm the judgment of the trial court.


Susanna Dokupil
Justice

Panel consists of Justices Guerra, Caughey and Dokupil.

---

[11] In this Court, Rodriguez's original brief sought additional monetary damages for Henriquez's statutory fraud in connection with the purchase and sale of 9410 Irby Street. In that brief, Rodriguez argued that the court erred by failing to award any damages for those acts of fraud. However, Rodriguez filed an amended brief, in which he abandoned that issue and substituted his third issue, in which he specifically challenged the trial court's failure to award him title to the property as damages for Henriquez's fraud. Accordingly, we do not consider whether the trial court erred by failing to award Rodriguez any monetary damages for Henriquez's acts of fraud in connection with 9410 Irby Street.